**FILED**

NOV 2 8 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ VRC _____ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORIS VY TRUONG, | Case No.: 17-cv-02179-BEN (RNB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | **(ECF Nos. 9, 20)** |

This Report and Recommendation is submitted to the Honorable Roger T. Benitez, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

On October 24, 2017, plaintiff Doris Vy Truong filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI"). (ECF No. 1.)

Now pending before the Court and ready for decision are the parties' cross-motions for summary judgment. For the reasons set forth herein, the Court **RECOMMENDS** that plaintiff's motion be **GRANTED**, that the Commissioner's cross-motion be **DENIED**, and that Judgment be entered reversing the decision of the Commissioner and remanding this

1   matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. §
2   405(g).

## PROCEDURAL BACKGROUND

On March 29, 2013, plaintiff protectively filed an application for SSI under Title XVI of the Social Security Act, alleging disability beginning September 1, 1997. (Certified Administrative Record ["AR"] 22, 164-72.) After her application was denied initially and upon reconsideration (AR 98-102, 107-12), plaintiff requested an administrative hearing before an administrative law judge ("ALJ"). (AR 113-15.) An administrative hearing was held on August 30, 2016. Plaintiff appeared at the hearing with counsel, and testimony was taken from her, from her mother (with the assistance of a Vietnamese interpreter), as well as from a medical expert ("ME") telephonically and a vocational expert ("VE"). (AR 37-78.)

As reflected in his September 29, 2016 hearing decision, the ALJ found that plaintiff had not been under a disability, as defined in the Social Security Act, since March 29, 2013, the date her application was filed. (AR 22-32.)

The ALJ's decision became the final decision of the Commissioner on August 22, 2017, when the Appeals Council denied plaintiff's request for review. (AR 1-6.) This timely civil action followed.

## SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 416.920. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since March 29, 2013, the application date.[1] (AR 24.)

---

[1]   SSI is not payable prior to the month following the month in which the application is filed. *See* 20 C.F.R. § 416.335.

2

1    At step two, the ALJ found that plaintiff had the following severe impairments:

2  ADHD; mood disorder; and history of alcohol dependence. (AR 24.)

3    At step three, the ALJ found that plaintiff did not have an impairment or combination

4  of impairments that met or medically equaled the severity of one of the impairments listed

5  in the Commissioner's Listing of Impairments. Specifically, the ALJ found that the

6  severity of plaintiff's mental impairments, considered singly and in combination, did not

7  meet or medically equal the criteria of Listings 12.02 (Organic Mental Disorders), 12.04

8  (Affective Disorders), and/or 12.09 (Substance Addiction Disorders). (AR 25.)[2]

9    Next, the ALJ determined that plaintiff had the residual functional capacity ("RFC")

10 to perform a full range of work at all exertional levels, but with the following nonexertional

11 limitations:

12      "[T]he claimant has no physical exertional limitations; the claimant can
13      remember, understand and carry out routine and non-complex tasks; the
        claimant can work in a non-public setting; the claimant must avoid work on
14      dangerous machinery; and the claimant can have no responsibility for safety
15      operations." (AR 26.)

16    At step four, the ALJ determined that plaintiff had no past relevant work. (AR 31.)

17 The ALJ then proceeded to step five of the sequential evaluation process. Based on the

18 VE's testimony that a hypothetical person with plaintiff's vocational profile and RFC

19 could perform the requirements of jobs that existed in significant numbers in the national

20 economy (*i.e.*, laundry folder; agricultural washer; and hand packager), the ALJ found that

21 plaintiff was not disabled. (*Id.* at 31-32.)

22

23

24

25

26 [2]   In connection with his Listings determination, the ALJ found with respect to the
   "paragraph B" criteria that plaintiff had mild restrictions in activities of daily living;
27 moderate difficulties in social functioning; moderate difficulties with regard to
   concentration, persistence, or pace; and no episodes of decompensation of extended
28 duration. (*See* AR 25.)

3

# PLAINTIFF'S CLAIMS OF ERROR

As best the Court can discern from plaintiff's summary judgment motion, plaintiff is claiming that the ALJ committed reversible error in the following respects:

1.    The ALJ failed to properly consider the opinions of plaintiff's treating physicians regarding her mental impairments. (*See* ECF No. 9-1 at 12-15, 18-19.)

2.    The ALJ failed to properly consider the opinions of the ME in making his Listings determination. (*See* ECF No. 9-1 at 13-14.)

3.    The ALJ failed to make a proper adverse credibility determination with respect to plaintiff's subjective symptom testimony. (*See* ECF No. 9-1 at 16-19.)

4.    The ALJ failed to make a proper adverse credibility determination with respect to the lay witness testimony of plaintiff's mother and sister. (*See* ECF No. 9-1 at 19-20.)

5.    The ALJ failed to incorporate the moderate mental limitations he found into his RFC determination. (*See* ECF No. 9-1 at 21-22.)

6.    The ALJ failed in his duty to develop the record when he "sent plaintiff to a dubious outfit specializing in Social Security disability examinations rather than an actual physician's office for a consultative exam." (*See* ECF No. 9-1 at 22-23.)

# STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-

4

1  30 (9th Cir. 1986).  Where evidence is susceptible of more than one rational interpretation,

2  the Commissioner's decision must be upheld.  *Gallant v. Heckler*, 753 F.2d 1450, 1452

3  (9th Cir. 1984).

4

5  **DISCUSSION**

6  A.  **The Court declines to consider the October 16, 2016 letter from Dr. Henderson**

7      **Attached as Exhibit A to plaintiff's summary judgment motion.**

8       The Social Security Act provides for federal court review of final decisions of the

9  Commissioner.  42 U.S.C. § 405(g) provides that "the Commissioner . . . shall file a

10 certified copy of the transcript of the record including the evidence upon which the findings

11 and decision complained of are based."  Based on "the pleadings and transcript of the

12 record," the court hearing the case may enter "a judgment affirming, modifying, or

13 reversing the decision of the Commissioner . . . with or without remanding the cause for a

14 rehearing." *Id.*

15      In *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012), the

16 Ninth Circuit held that the administrative record includes evidence submitted to and

17 considered by the Appeals Council.  Under the Commissioner's regulations in effect on

18 November 14, 2016, when plaintiff sought Appeals Council review of the ALJ's decision,

19 claimants were permitted to submit new and material evidence to the Appeals Council and

20 the Appeals Council was required to consider that evidence in determining whether to

21 review the ALJ's decision so long as the evidence related to the period on or before the

22 date of the ALJ decision.  *See* 20 C.F.R. § 416.1570(b); *see also Brewes*, 682 F.3d at 1162.

23 Although the Commissioner's regulations were revised effective January 17, 2017 to

24 include the requirement that the claimant show good cause for not submitting the evidence

25 to the ALJ at least 5 business days before the hearing, the Appeals Council expressly

26 advised plaintiff here that the requirement to show good cause did not apply to her.  (*See*

27 AR 8-9.)

28

5

Plaintiff contends that the Appeals Council violated *Brewes* when it failed to include in the Administrative Record the October 16, 2016 letter from Dr. Henderson that plaintiff attached as Exhibit A to her summary judgment motion, which plaintiff maintains was provided to the Appeals Council. (*See* ECF No. 9-1 at 15.)

The date of the ALJ's decision here was September 29, 2016. (AR 32.) In its August 22, 2017 order denying plaintiff's request for review, the Appeals Council stated the following under the heading "Additional Evidence":

> "You submitted reports from San Diego Unified School District dated November 25, 1998 (3 pages) and June 20, 2005 (7 pages) and a letter from Harry Henderson, M.D., dated November 7, 2016 (3 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not consider and exhibit this evidence." (AR 2.)

The Appeals Council did not state that any of the additional evidence was not considered because it did not relate to the period on or before the date of the ALJ's decision. Moreover, in the Court's view, the statement by the Appeals Council that it did not consider the additional evidence is a *non sequitur*. The Appeals Council had to consider the additional evidence to find that it did "not show a reasonable probability that it would change the outcome of the decision."

The Court notes, however, that the letter from Dr. Henderson referenced by the Appeal Council bears a different date from the Dr. Henderson letter attached as Exhibit A to plaintiff's summary judgment motion. Further, based on the references to Dr. Henderson's letter contained in plaintiff's counsel's November 8, 2016 letter requesting review (AR 159-62), the Court is not convinced that Exhibit A to the summary judgment motion is the same letter from Dr. Henderson that plaintiff submitted to the Appeals Council as "new evidence." For example, plaintiff's counsel stated on page 1 of the November 8, 2016 letter: "The new evidence consists of Dr. Henderson's report of attention deficit disorder and severe depression, Exh. A." (AR 159.) In the letter attached

as Exhibit A to the summary judgment motion, Dr. Henderson addressed a different issue, namely why he had not previously diagnosed plaintiff with autism and learning disabilities.

Because the Court is not convinced that the October 16, 2016 letter from Dr. Henderson attached as Exhibit A to the summary judgment motion was ever submitted to the Appeals Council or ever considered by the Appeals Council, the Court rejects plaintiff's contention that the Appeals Council erred in failing to include that letter in the Administrative Record and the Court declines to consider it.

**B.** **Reversal is not warranted based on the ALJ's alleged failure to properly develop the record.**

Plaintiff contends that the ALJ failed in his duty to develop the record when he "sent plaintiff to a dubious outfit specializing in Social Security disability examinations rather than an actual physician's office for a consultative exam." (*See* ECF No. 9-1 at 22-23.)

It is well-established that the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered, and that this special duty exists even when the claimant is represented by counsel. *See Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983); *see also Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 930 (9th Cir. 2014). "An ALJ's duty to develop the record further is triggered . . . when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

However, the ALJ has broad latitude in ordering a consultative examination, and a claimant does not have an affirmative right to have a consultative examination performed by a chosen specialist. *See Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001). Here, at the conclusion of the administrative hearing, the ALJ noted that plaintiff had been scheduled to attend a psychological exam, but she had declined to attend because she did not think the outfit would give an objective opinion. (AR 76.) The ALJ advised plaintiff and her counsel that, based on the ME's testimony that there was not enough information in the file for him to give an opinion on a period of time sufficient to establish that plaintiff

1 met or even came close to meeting or equaling a Listing, he was going to request another
2 psychological exam. (*Id.*) The ALJ specifically asked plaintiff if she would attend, and
3 plaintiff responded in the affirmative. (*Id.*) However, plaintiff subsequently again refused
4 to keep the appointment scheduled for her, insisting that the designated examiner was
5 "biased and a fake" and requesting that she be sent to "a practicing doctor." (*See* AR 265.)

6       The Court finds that this is not an instance of the ALJ failing in his duty to develop
7 the record, but rather an instance of the claimant failing to cooperate in the development of
8 the record. As noted above, plaintiff did not have an affirmative right to choose who would
9 perform the consultative exam. The Court therefore declines to find that reversal is
10 warranted based on this alleged ALJ error.

11

12 **C.**    **Reversal is not warranted based on the ALJ's alleged failure to make a proper**
13     **adverse credibility determination with respect to plaintiff's subjective symptom**
14     **testimony.**

15       In a function report dated May 22, 2013 (AR 204-12), plaintiff stated that she was
16 in special education classes in elementary through high school and she could not study in
17 her second year in college because she did everything slow and had delayed thoughts and
18 was depressed. Plaintiff said she spent her day watching television and doing homework.
19 Plaintiff also had a dog that she fed and walked. She indicated that she had no problems
20 with personal care, although she did need some hygiene reminders and help with her
21 medication. While she did not cook, she did prepare simple frozen meals, do the dishes
22 sometimes, and did do her own laundry -- which her mom helped with. Plaintiff said she
23 rarely went outside, but she also said she rode her bike and went out independently, though
24 she did not drive a car because she did not have a license. She did shop for clothes with
25 assistance in transportation. Plaintiff could count and use checkbooks, but did not have a
26 job, so she did not handle a savings account or pay bills. Plaintiff said she listened to music
27 every day. According to plaintiff, she had no friends and did not spend time with others.
28 She also said she did not get along with her brothers because they call her "retarded" and

she liked to be alone. Plaintiff said she could not walk far because she fell down and could only pay attention for 30 minutes. She also said she could not follow written or spoken instructions because she wrote slow and needed further explanation for spoken instructions if she did not understand them. Plaintiff said she did get along with her teachers and did not give them a hard time. Plaintiff also said changes in stress or routine were inapplicable to her.

In a disability report dated October 16, 2013 (AR 233-38), plaintiff stated that she was "paranoid, traumatized, [and] subject to anger spells and panic attacks." She also said she could not concentrate, was "mentally retarded," and could not attend school or complete any work. (AR 233.)

At the administrative hearing, plaintiff testified that she graduated from high school in 2010, where she had taken a combination of special education classes and regular classes. (AR 43.) She further testified that, after high school, she went to college for five years where she took four or five classes per semester; however, she recently quit to attend beauty school. (AR 43-44.) While attending college, she did receive disability services and was given extra time to complete tests. (AR 44.) When not in school, she spends time at home listening to music. (AR 44-45.) She also socializes with friends, who take her out every once in a while. (AR 45.) The only medication she takes is Doxycycline, for acne. (*Id.*) When asked what problems she had that would prevent her from working, plaintiff said it was her problems with reading comprehension. (AR 54.) Plaintiff also said she was spending six hours a day (eighteen hours total) at beauty school, where she was doing well. (AR 54-55.) She denied being on any mental health medication. (AR 56.) Following her mother's testimony, plaintiff disputed that her mother drove her around a lot. (AR 63.)

In her summary judgment motion, plaintiff contends that the ALJ failed to make a proper adverse credibility determination with respect to plaintiff's subjective symptom testimony. (*See* ECF No. 9-1 at 15-19.)

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *see also Nyman v. Heckler*,

9

779 F.2d 528, 531 (9th Cir. 1986). Under the *"Cotton* test," where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. *See Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986); *see also Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc).

Here, the ALJ did find that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms she alleged. (*See* AR 28.) Moreover, the Commissioner has not argued that there was evidence of malingering. Accordingly, the Court will apply the "clear and convincing" standard to the ALJ's adverse credibility determination. *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) (applying "clear and convincing" standard where the government did not argue that a lesser standard should apply based on evidence of malingering); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1163 n.9 (9th Cir. 2014) (same).

The Court construes the ALJ's decision as reflecting several reasons for the ALJ's adverse credibility determination. The first reason was that plaintiff's assertions of disability were inconsistent with her other statements and testimony. In this regard, the ALJ specifically cited plaintiff's acknowledgement that she was able to finish high school and attended community college for five years where she took four to five classes; that she listens to rock music; that she goes out occasionally; that her friends drive her around; that she rides around on her bike; and that she is in the process of obtaining her driver's license. (*See* AR 27.) The Court concurs that the activities acknowledged by plaintiff were inconsistent with statements made by plaintiff in her function report and disability report (*e.g.*, that she had no friends and did not spend time with others, and that she could not attend school or complete any work). The Court finds that the inconsistencies in plaintiff's

testimony constitutes a clear and convincing reason on which the ALJ could properly rely in support of his adverse credibility determination. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (evidence of daily activities may form basis of an adverse credibility determination where it contradicts the claimant's other testimony); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (ALJ may properly rely on inconsistent statements in the claimant's testimony); *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (same); *Bunnell*, 947 F.2d at 346 (same).

In support of his adverse credibility determination, the ALJ also noted that plaintiff testified that the only medication she took was a medication for her acne. (AR 27.) The Court finds that the fact plaintiff was not taking any psychotropic medications for her allegedly disabling mental impairments also constituted a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination. *See* 20 C.F.R. § 416.929(c)(3)(iv); Social Security Ruling[3] ("SSR") 96-7p (an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints"); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment); *Osenbrock v. Apfel*, 240 F.3d 1156, 1166 (9th Cir. 2001) (ALJ properly rejected excess symptom testimony where claimant had not been using a strong Codeine or Morphine based analgesic).

In support of his adverse credibility determination, the ALJ also cited plaintiff's refusal to attend the post-hearing consultative examination that she had stated at the hearing she would attend. The ALJ stated that he was drawing the adverse inference from plaintiff's refusal that she was attempting to limit the evidence to evidence that was most favorable to her. (*See* AR 27.) It is well settled that ordinary techniques of credibility evaluation apply in social security cases. *See Tonapetyan*, 242 F.3d at 1148; *Fair v. Bowen*,

---

[3] Social Security Rulings are binding on ALJs. *See Terry v. Sullivan*, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

885 F.2d 597, 604 n.5 (9th Cir. 1989). In the Court's view, the adverse inference drawn by the ALJ was not unreasonable and the Court therefore finds that this also constituted a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination.

Another consideration for the Court is that plaintiff contends in her Reply Memorandum that the ALJ erred in relying on her administrative hearing testimony in rejecting the opinions of her treating physicians because she "was 'delusional' in testifying that she was able to function." (*See* ECF No. 25 at 7-8.) In the Court's view, plaintiff cannot have it both ways. If, as a result of her mental impairment, plaintiff concedes that she was unable to provide credible testimony upon which the ALJ could properly rely, the Court cannot fault the ALJ for failing to credit the parts of her testimony favorable to her disability claim.

For all of the foregoing reasons, the Court declines to find that reversal is warranted based on the ALJ's alleged failure to make a proper adverse credibility determination with respect to plaintiff's subjective symptom testimony.

## D. Reversal is not warranted based on the ALJ's alleged failure to properly consider the opinions of plaintiff's treating physicians regarding her mental impairments.

Medical opinions are among the evidence that the ALJ considers when assessing a claimant's RFC. *See* 20 C.F.R. § 416.927(b).

The law is well established in this Circuit that a treating physician's opinion is entitled to special weight because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. *See McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is

consistent with other evidence in the record. *See* 20 C.F.R. § 416.927(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Baxter v. Sullivan*, 923 F.3d 1391, 1396 (9th Cir. 1991). Where a treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. *See, e.g., Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("A treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record."); *Magallanes*, 881 F.2d at 751; *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).

Here, plaintiff is claiming the ALJ failed to properly consider the opinions of four of her treating physicians: Dr. Sidrick, Dr. Henderson, Dr. Lessner, and Dr. Grisolia. (*See* ECF No. 9-1 at 12.) However, in the Court's view, Dr. Lessner does not qualify as a treating physician, since he never treated plaintiff, but rather only saw her for the purpose of rendering a psychological evaluation on the referral of plaintiff's treating psychiatrist, Dr. Henderson. (*See* AR 358.) The Court therefore will address the ALJ's consideration of Dr. Lessner's opinions separately below.

In her opposition/cross-motion, the Commissioner does not contend that the opinions of any of plaintiff's treating physicians regarding plaintiff's mental impairments were controverted by another physician of record. So, the question becomes whether the ALJ provided "clear and convincing" reasons for rejecting those opinions.

### 1. Dr. Sidrick

In a letter dated December 18, 2013, Dr. Sidrick stated that plaintiff had no physical limitations. (AR 346.) The ALJ stated that he was giving significant weight to this portion of Dr. Sidrick's letter. (AR 31.)

Dr. Sidrick also wrote in her letter:

13

> "[Plaintiff] has a history of learning disability. She sees a psychiatrist, but medications have not improved her inability to concentrate, study and pass special education classes. . . . Her ability to follow instructions and perform job duties limits her employability; she needs a careful psychological exam to determine her actual abilities and intelligence." (AR 346.)

The ALJ's rationale for giving "less weight" to these other assertions was that Dr. Sidrick's assertion about plaintiff's history of learning disability was based on information given to her, and her assertion about the medications not improving plaintiff's ability to concentrate, study, and pass special education classes was contradicted by the evidence that plaintiff had done well in some classes. (AR 31; *see also* AR 272.)

The record substantiates that, when Dr. Sidrick asserted that plaintiff has a history of learning disability, she merely was relating what was reflected in plaintiff's school records, as opposed to rendering a judgment herself. (*See* AR 304.) Thus, this assertion by Dr. Sidrick did not even qualify as a medical opinion. *See* 20 C.F.R. § 416.927(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."). Moreover, the Court finds that the inconsistency between the inference from Dr. Sidrick's assertion that plaintiff was unable to pass her special education classes and the evidence of record regarding plaintiff's class grades (*see* AR 272) does constitute a clear and convincing reason for rejecting Dr. Sidrick's assertion regarding the supposed lack of effectiveness of plaintiff's medications. *See Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995) (ALJ properly rejected examining physician's opinion that claimant's alcoholism was uncontrolled where the opinion was contradicted, *inter alia*, by plaintiff's testimony that he had been able to control his alcohol and drug dependence for years at a time). Most importantly, the Court finds that the ALJ did not err in giving "less weight" to Dr. Sidrick's other assertions because the vague assertion that "[plaintiff's] ability to follow instructions and perform job duties limits her employability" does not indicate what plaintiff can still do despite her mental impairments, or specify any mental restrictions. *See*

14

20 C.F.R. § 416.927(a)(1). Indeed, Dr. Sidrick herself acknowledged the need for a psychological exam to determine plaintiff's actual abilities.

### 2. Dr. Henderson

The medical evidence of record included a three-page letter from Dr. Henderson dated January 25, 2016. (AR 387-89.)

Dr. Henderson wrote that he had treated plaintiff since October 2012; and that a review of his treatment records indicated that plaintiff continued to suffer severe depression and psychosis due to her background as an autistic child and problems with self-esteem. Dr. Henderson also believed that plaintiff had chronic developmental problems and psychosis which left her unable to progress mentally. According to Dr. Henderson, plaintiff had a history of suffering severe child autism and exhibited all the typical effects of child autism -- anxiety, depression, disassociation, and difficulty concentrating. Dr. Henderson stated that plaintiff had been unable to graduate even though she did attend school; and that, according to her mother, plaintiff kept repeating courses until she got so many failing grades that she was kicked out of school and college. Dr. Henderson also stated that plaintiff had difficulty connecting with others as she stayed by herself all day and did not go out or have any social function. (AR 387.)

Dr. Henderson also wrote that plaintiff had lack of trust and relationship difficulties, core feelings of being "worthless" and "damaged," trouble regulating emotions, and difficulty sleeping due to recurrent nightmares. Dr. Henderson stated that plaintiff had been having frequent panic attacks and bouts of hallucinations; and that there was evidence of psychosis and schizophrenia. Dr. Henderson reiterated the statements of plaintiff's mother that plaintiff was devastated by her father's recent death; that she had complained of memory loss and anxiety, and chronic pain and feelings of loss; and that her pain, depression, and recurrent obsessive thoughts interfered with her concentration and attention. Dr. Henderson indicated that plaintiff could not recall three nouns after three minutes or perform serial 3's; that her ability to concentrate on even simple new tasks was

1   poor; and that she was lethargic and showed little interest in outside activities. Dr.

2   Henderson also indicated that plaintiff had worsening mental pain due to autism,

3   headaches, and neuropathy. (AR 388.)

4       Dr. Henderson's current psychiatric diagnosis was major depression, recurrent; and

5   chronic throbbing headaches, autism, chronic pain syndrome, mental

6   retardation/psychosis, father's mourning, and schizophrenia. He assessed plaintiff's

7   current Global Assessment of Functioning ("GAF") score as 45 -- indicating serious

8   symptoms and/or serious impairments in social, occupational, or school functioning.

9   Further, Dr. Henderson opined that, based on his review of available medical documents,

10  treating notes, and reports from plaintiff, she had: "marked" restriction of activities of daily

11  living, "marked" difficulties in maintaining social functioning, and "often" deficiencies of

12  concentration, persistence, or pace resulting in failure to complete tasks in a timely manner

13  in work settings or elsewhere. Dr. Henderson wrote that plaintiff was taking strong and

14  potent narcotic medications such as Neurotonin, Zyprexa, and Depakote to control pain

15  and depression, which led to chronic fatigue and sedation that affected her ability to

16  concentrate. Dr. Henderson further opined that plaintiff's ability to adapt to stress in a

17  working environment was severely limited; and that she would not be able to compete in

18  the workplace and was in need of continued therapy. (AR 389.)

19      In his decision, the ALJ indicated that he was giving "little weight" to Dr.

20  Henderson's opinions for several reasons. (*See* AR 29-30.) The ALJ noted that Dr.

21  Henderson's treatment notes were mostly illegible. The ALJ also noted that the diagnoses

22  made by Dr. Henderson in his letter, including severe depression, psychosis and autism

23  were inconsistent with his treatment notes, which only listed the diagnosis of ADHD, for

24  which Dr. Henderson had prescribed solely Adderall. (*See* AR 29, citing AR 318-19, 327-

25  33, 377-85, 387, 390-99.) This also was at odds with Dr. Henderson's statement that

26  plaintiff was on strong medications such as Neurotonin, Zyprexa, and Depakote. Indeed,

27  plaintiff testified at the administrative hearing that she did not take any psychotropic

28  medication, and that the only medication she took was for acne. (AR 45.)

The ALJ also noted that, while Dr. Henderson had stated in his letter that plaintiff suffered from severe autism, that diagnosis had never been substantiated by any formal testing or noted in any of plaintiff's school records. (*See* AR 29; *see also* AR 266-303.) The ALJ also noted that Dr. Henderson's statements that plaintiff was withdrawn and/or had difficulty connecting with others, and that she stayed by herself all day and did not go out or have any social function were inconsistent with plaintiff's testimony that she got around on her bike or sometimes asked for rides. (AR 29.) Plaintiff also had testified that she did have friends with whom she socialized. (AR 45.)

Contrary to Dr. Henderson's statements about plaintiff's educational background, including what plaintiff's mother had related to him, the ALJ noted that plaintiff had testified that she had been attending community college for five years and then quit college to enroll in beauty school; that plaintiff's school records indicated that although she was delayed in speaking English, she was in general education classes with some support from special education teachers; that her Individualized Education Plan ("IEP") indicated she did not require a "Positive Behavior Support Plan or a Functional Analysis and Behavior Intervention Plan"; that her grades in high school ranged from F's in English to A's, B's and C's in other academic classes; and that her delay in English was noted to be due to the fact that her primary language while growing up was Vietnamese, while English was her second language. (AR 30; *see also* AR 43-45, 266, 270, 272, 278-79.) Finally, the ALJ noted that, during the entire period that Dr. Henderson was treating plaintiff, he apparently never himself administered a mental status examination on her. (AR 30; *see also* AR 318-19, 327-33, 377-85, 390-99.)

The Court finds that the lack of support in Dr. Henderson's treatment records for the opinions expressed in his January 25, 2016 letter and the inconsistencies noted by the ALJ between Dr. Henderson's opinions and other evidence of record constituted clear and convincing reasons for not crediting those opinions. *See, e.g., Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (holding that contradiction between a treating physician's opinion and his treatment notes constitutes a legally sufficient reason

for rejecting the treating physician's opinion); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that contradiction between treating physician's assessment and clinical notes justifies rejection of assessment); *Tonapetyan*, 242 F.3d at 1149 (holding that treating physician's opinion that was "unsupported by rationale or treatment notes, and offered no objective medical findings" to support diagnoses was properly rejected); 20 C.F.R. § 416.927(c)(4) (ALJ may consider consistency between treating medical opinion and record as a whole).

### 3. Dr. Grisolia

In a progress note dated August 25, 2016, Dr. Grisolia assessed plaintiff as having "specific developmental learning difficulties." Dr. Grisolia reviewed plaintiff's IEPs and psychological testing assessment, and noted that her testing revealed consistent problems in all academic skills, including math and reading, as well as cognitive deficits. Dr. Grisolia also indicated that many of plaintiff's skills were less than 5-10% of the population average and were more disabling due to her slowness in performance and psychological barriers. Dr. Grisolia noted that school clinicians suspected autism, which he had also found on his own evaluation due to her documented inabilities to function independently, which rendered her unable to perform any substantial beneficial activity in the labor force. According to Dr. Grisolia, plaintiff would have a permanent disability from this congenital problem. (AR 401.)

In his decision, the ALJ indicated that he was rejecting Dr. Grisolia's opinion that plaintiff was autistic because there was no autism exam given by him or anyone else in the record. (AR 30.) The Court finds that this constitutes a clear and convincing reason for rejecting that opinion. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."). While Dr. Grisolia indicated in his August 25, 2016 progress note that this diagnosis was based on his own evaluation, there never was an assessment by Dr. Grisolia that confirmed a

1  diagnosis of autism. The only other progress notes in the record from Dr. Grisolia were
2  from two years earlier. In his June 24, 2014 progress note, the earliest one in the record,
3  Dr. Grisolia did not diagnose plaintiff as suffering from autism; rather, he indicated only
4  that plaintiff's odd affect "suggests a possible autistic spectrum disorder" and that it would
5  be helpful to review her IEP. (AR 356.) He noted the same thing in his next progress note
6  dated August 5, 2014. His mental examination at that time was unremarkable with only
7  notes for reduced memory and attention. (AR 354-55.) Dr. Grisolia's mental examination
8  on August 25, 2016 was likewise unremarkable. He noted that plaintiff was fully oriented;
9  that her speech was fluent; that her comprehension and language was intact, although she
10  continued with an odd affect; and that she had reduced memory and attention. (AR 402.)

11      Dr. Grisolia's opinions that plaintiff's disabilities rendered her unable to perform
12  substantial beneficial activity in the open labor force and that she would have a permanent
13  disability from this congenital problem were predicated on his autism diagnosis. It follows
14  from the Court's affirmance of the ALJ's rejection of Dr. Grisolia's autism diagnosis that
15  the ALJ did not err in failing to credit those other opinions of Dr. Grisolia.[4]

16  //
17  //
18  //
19  //
20
21

22  [4]  The ALJ further indicated that he was rejecting Dr. Grisolia's other opinions because
23  they were merely speculation on Dr. Grisolia's part and they were inconsistent with
    plaintiff's testimony at the hearing, where plaintiff spoke clearly, answered all the
24  questions, and though she appeared aloof and was disagreeable with her mother, she
25  exhibited no behavior that is generally seen in autistic individuals. (AR 30.) The Court
    disagrees with the Commissioner that the ALJ was entitled to rely on plaintiff's demeanor
26  at the hearing to reject Dr. Grisolia's opinions because (a) the authorities cited by the
27  Commissioner relate to the evaluation of a claimant's credibility not the evaluation of
    medical source opinions, and (b) the ALJ was not qualified to know what behavior is
28  generally seen in autistic individuals.

17-cv-02179-BEN (RNB)

**E. Reversal is not warranted based on the ALJ's alleged failure to properly consider the opinions of the ME, Dr. Akins, in making his Listings determination.**

In 20 C.F.R. Part 404, Subpart P, Appendix 1, the Commissioner has set forth certain impairments that are presumed to be of sufficient severity to prevent the performance of work. *See* 20 C.F.R. § 416.925(a). At step three of the Commissioner's sequential evaluation process, the ALJ must determine whether a claimant's impairment or combination of impairments meets or equals a listed impairment. *See Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If a claimant has an impairment that meets or equals a listed impairment, disability is presumed and benefits are awarded. *See* 20 C.F.R. § 416.920(d); *Barker v. Secr'y of Health & Human Servs.*, 882 F.2d 1474, 1477 (9th Cir. 1989).

The claimant has the burden of proving disability, including disability based on the Listing of Impairments. *See Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996); *Vick v. Comm'r of Soc. Sec. Admin.*, 57 F. Supp. 2d 1077, 1087 (D. Or. 1999). The mere diagnosis of a listed condition does not establish that a claimant "meets" the Listings. *See Young v. Sullivan*, 911 F.2d 180, 183-84 (9th Cir. 1990). "For a claimant to show that his impairment matches a listing, it must meet **all** of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see also* 20 C.F.R. § 416.925(d). Thus, the ALJ must find that the claimant has an impairment that corresponds in diagnosis, severity and duration to a listed impairment.[5]

At the administrative hearing, Dr. Akins, a psychologist, testified as the ME regarding plaintiff's mental impairments and whether he believed that plaintiff met any of the Listings. Initially, Dr. Akins was reluctant to provide an opinion regarding whether

---

[5] Unless the particular listing otherwise specifies, the durational requirement is twelve continuous months. *See* 20 C.F.R. § 416.925(c)(4).

17-cv-02179-BEN (RNB)

plaintiff met a listing due to the relatively few data points in the record. (AR 46.) Specifically, Dr. Akins stated he would be "pushing it to come up with 12 full months [] with nothing in the record after August 2014." (*Id.*). During the hearing, additional medical records were provided to Dr. Akins. (AR 47.) With respect to the testing performed by Dr. Lessner, Dr. Akins testified that the validity of the testing was "probably fairly good," but he would not feel comfortable stating that "those alone are sufficient to establish that criteria are met for disability under Social Security." (AR 49-50.)

Additional medical records were then provided to Dr. Akins. (AR 50-51.) After reviewing those additional records, Dr. Akins pointed out that while Dr. Henderson had provided a medical source statement noting that he had been treating plaintiff on a monthly basis since October 2012, the additional records appeared to be incomplete because there was nothing from 2015. Moreover, the treatment notes were illegible. (AR 65-66.) Dr. Akins also characterized Dr. Henderson's records as "fairly skimpy." (AR 67.) Dr. Akins testified that he did not have enough of an evidence record from Dr. Henderson to support the statements in Dr. Henderson's January 25, 2016 letter because the only diagnosis in Dr. Henderson's treatment records was ADHD, and in his January 25, 2016 letter, that diagnosis was not even reported by him. (AR 69.)

With respect to Dr. Grisolia, Dr. Akins noted that, while he had a primary diagnosis of a learning development difficulty since 1998, learning disorder was not something that was noted in the diagnoses from Dr. Henderson and there were no records from 2014 to 2016 to support Dr. Grisolia's assessment. (AR 69-70.) Dr. Akins acknowledged that while Dr. Henderson's summary letter was favorable and stated that, if there were supporting medical records, he could offer a favorable opinion. In the meantime, he could only provisionally offer an opinion that plaintiff could meet Listings 12.10 for autism and/or 12.03 for schizophrenia. (AR 70-71.) Dr. Akins made it absolutely clear that his opinion was provisional upon there being actual, substantial, foundational medical reports that would directly support Dr. Henderson's summary conclusions in his January 25, 2016

letter. (AR 72.) Dr. Akins further testified that it would be "very unusual" for a psychiatrist to make those diagnoses and not prescribe medications to deal with them. (AR 72.)

In his decision, the ALJ explained that he was giving "some weight" to the testimony of Dr. Akins. (AR 29.) After citing Dr. Akins's statement that, "assuming that we have the records that support Dr. Henderson's statement, the claimant could meet 12.04 for autism and 12.03 for schizophrenia," the ALJ remarked that "[t]he testimony of Dr. Henderson can only be interpreted to mean that he did not review any records that indicated the claimant has those specific conditions, and for the reasons stated above, the medical evidence of record does not document them." (*Id.*) Taken in context, the Court presumes that the ALJ's remark was actually directed to the testimony of Dr. Akins, not Dr. Henderson. The Court concurs with the Commissioner that contrary to plaintiff's contention, Dr. Akins did not conclusively opine that plaintiff met the Listings for autism or schizophrenia, but rather conditioned his opinion on whether the statements in Dr. Henderson's January 25, 2016 letter were supported by his treatment records. As discussed above, the ALJ found that the opinions expressed by Dr. Henderson in his January 25, 2016 letter were not supported by his treatment records. Since the Court concurs with that finding, the Court finds that the ALJ validly discounted Dr. Akins's provisional opinion that plaintiff satisfied the Listings for autism and schizophrenia. It follows that reversal is not warranted based on the ALJ's alleged failure to properly consider Dr. Akins's opinions.

**F.** **The ALJ erred in his evaluation of the opinions of the examining physician, Dr. Lessner.**

On August 16, 2014, Dr. Lessner conducted a psychological evaluation of plaintiff at the request of Dr. Henderson. Dr. Lessner observed that plaintiff seemed withdrawn and docile, and spoke in whispers with occasional outbursts. (AR 358.) He described plaintiff's dialogue as "confused, fragmented, scattered, hesitant and delayed." He also observed that plaintiff seemed to be spaced out and appeared to be glaring outwardly without direction or purpose. Dr. Lessner believed that plaintiff lacked insight into her

17-cv-02179-BEN (RNB)

1  problems and was in denial. (AR 359.) Dr. Lessner also noted Dr. Grisolia's diagnosis of
2  a possible autistic spectrum disorder. (AR 360.)

3     Dr. Lessner administered a series of tests, and noted that plaintiff's scores were
4  suggestive of serious psychopathology. (AR 363.) The testing also revealed that plaintiff
5  "was trying to create a favorable impression by not being candid or honest in her replies to
6  items"; that she was insensitive to the needs of others; and that she had avoided close
7  interactions and had become socially alienated and isolated due to her speech handicap.
8  (AR 364.)

9     Testing also showed that plaintiff was disorganized and disoriented, and had unusual
10 thoughts with a schizoid lifestyle; that plaintiff was withdrawn, reclusive and avoided
11 dealing with people, but denied any depression; and that plaintiff had self-worth issues and
12 was easily frustrated, impulsive, and restless. (AR 365.)

13    Dr. Lessner believed that many of plaintiff's responses "clearly manifest bizarre
14 mentation and psychotic behavior." (AR 366.) He also noted that the testing revealed the
15 presence of symptoms of depression and feelings of inferiority; and that "[p]sychotic
16 conditions associated with organicity was strongly indicated." (AR 367.) Testing
17 combined with her other behaviors also showed that plaintiff was "profoundly depressed."
18 (AR 368.)

19    Dr. Lessner reported that plaintiff's testing resulted in a Verbal IQ score of 87, a
20 Non-Verbal IQ score of 87, and a Full Scale IQ score of 87, which was in the range of low
21 normal intelligence. But he noted that "her IQ would not be a factor negatively affecting
22 her behavior." Rather, "[o]ther features, such as organicity, autism, personality disorder,
23 emotional degeneration and psychotic symptoms would contribute more toward her
24 maladjustment and pathology." (AR 369.)

25    Dr. Lessner diagnosis was: major depression with psychotic features; alcoholism
26 dependence; schizoid personality disorder; organicity, autism, lethargy, sleep disturbance,
27 and somatic complaints; and social, emotional, and psychotic health problems. He assessed
28 a GAF score of 40. (AR 370.)

In his decision, the ALJ stated that he was giving "less weight" to Dr. Lessner's report for the following reasons:

> "Many of the assertions contained therein are inconsistent with the facts. Dr. Lessner writes that the claimant was in a special education program from age six or seven, until she was 18. As shown above, this is not true. Dr. Lessner writes "her birth defect as an autistic child will permanently deprive her from ever making it on her own. It is a lifetime handicap." Again, there is no diagnosis of autism in the record. Further, Dr. Lessner administered an IQ test to the claimant on which she obtained scores of 87 on the verbal IQ, non-verbal IQ, and Full Scale IQ. Nevertheless, Dr. Lessner diagnosed the claimant with major depression, alcohol dependence, schizoid personality, autism disorder, and a GAF score of 40. Finally, the only medications that the claimant was prescribed by either Dr. Grisolia or Dr. Henderson were medications were [sic] ADHD, and the claimant was never prescribed anti-psychotic or anti-depressant medications." (AR 30. (internal citations omitted))

The same standard cited above for the consideration of treating physician opinions applies to the consideration of examining physician opinions. The Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Lester*, 81 F.3d at 830. Even if contradicted by another doctor, the opinion of an examining physician may only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *See id.* at 830-31; *Andrews*, 53 F.3d at 1043. Here, since the Commissioner does not contend that Dr. Lessner's opinions were controverted by another physician of record, the question becomes whether the ALJ provided "clear and convincing" reasons for rejecting those opinions. In the Court's view, the answer is no.

First, the statement about plaintiff being in a special education program until age 18, which the ALJ cited, was information that had been relayed to Dr. Lessner from plaintiff's mother. (*See* AR 359.) The ALJ was just quibbling. The statement was not even inaccurate, let alone a clear and convincing reason for rejecting Dr. Lessner's opinions based on his own examination and testing of plaintiff. Second, autism was just one of Dr.

1    Lessner's diagnoses and the fact that there is no other diagnosis of autism in the record is

2    not a clear and convincing reason for rejecting Dr. Lessner's diagnosis, based on his own

3    examination, testing, and consideration of the social history information related to him.

4    Third, the Court fails to see the contradiction between plaintiff's IQ scores and Dr.

5    Lessner's diagnoses of major depression, alcohol dependence, schizoid personality, autism

6    disorder, and a GAF score of 40.  People with higher IQ scores than plaintiff are not

7    immune from suffering from depression, alcohol dependence, or schizophrenia.  Finally,

8    the Court fails to see how the fact that plaintiff's treating physicians had never prescribed

9    anti-psychotic or anti-depressant medications detracts from Dr. Lessner's diagnoses based

10   on his own examination and testing of plaintiff.

12   **G.**    **The ALJ failed to make a proper adverse credibility determination with respect**

13        **to the lay witness testimony of plaintiff's mother and sister.**

14        Plaintiff contends that the ALJ improperly rejected the administrative hearing

15   testimony of her mother and the testimony of her sister reflected in a third party function

16   report. (*See* ECF No. 9-1 at 19, citing AR 59-62 and AR 195-203.)

17        The law is well-established in this Circuit that lay witness testimony as to how a

18   claimant's symptoms affect the claimant's ability to work is competent evidence and

19   cannot be disregarded without providing specific reasons germane to the testimony

20   rejected. *See, e.g.*, *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Smolen*, 80

21   F.3d at 1288-89; *Dodrill*, 12 F.3d at 919; *see also* 20 C.F.R. § 416.913(d). [6]

22        Here, plaintiff's mother testified at the administrative hearing that when plaintiff was

23   young, she had signs of slow growth and was a slow learner; that she was unable to find

24   jobs even though she was looking and being helped by the Department of Rehabilitation;

25   that she speaks slowly and does not sleep well at night; that she has pain in her hands and

27

28   [6]    The relevant version of 20 C.F.R. § 416.913 is the version in effect at the time of
     plaintiff's benefits application. *See* 82 Fed. Reg. 5844, 5862 (Jan. 18, 2017).

headaches; that she does not cook anything; that she does not really do anything or any cleaning at home; that she has to be provided with transportation and is taken everywhere by her mother; and that she does not have any friends with whom she socializes. (AR 59-62.) In a third party function report, the mother also stated *inter alia* that plaintiff stayed in her room most of the time and only went outside to go to the doctor; that she has temper tantrums; and that her condition affects her ability to engage in a wide range of physical activities (*e.g.*, lifting, squatting, bending, standing, reaching, walking, and sitting), as well as a wide range of mental activities (*e.g.*, memory, completing tasks, concentration, understanding, and following instructions). (*See* AR 222-30.)

In a third party function report, plaintiff's sister stated, *inter alia*, that plaintiff was slow to process information; that she has a difficult time with comprehension; that she has a documented history of developmental delays; that she needs frequent prompting and reminders with regard to personal care and household chores; that her condition affects her ability in the areas of talking, completing tasks, concentration, understanding, and following instructions. (*See* AR 195-203.)

The ALJ stated that he was affording the statements of plaintiff's mother "less weight" because they "are only partially consistent with the findings adopted herein." (AR 27.) Since the ALJ did not specify what findings he was referring to, the Court can only speculate that he was referring to the findings he incorporated into his RFC determination and/or the findings that he made regarding the "paragraph B" criteria in connection with his Listings determination. However, the fact that plaintiff's mother's statements were only "partially consistent" with the findings adopted by the ALJ was not a legally sufficient reason for not crediting her statements because the ALJ was required to consider her statements **prior** to making those findings.

As to plaintiff's sister, the ALJ stated that he was affording her statements in the third-party function report "less weight" because they "have not been given under oath and are only partially consistent with the findings adopted herein." (AR 27.) However, the fact that plaintiff's sister's statements were not made under oath was **not** a legally sufficient

17-cv-02179-BEN (RNB)

reason on which the ALJ could properly rely to find the sister's statements not credible. The Ninth Circuit has held that unsworn lay statements, such as letters from friends and family describing a claimant's abilities, constitute competent evidence that an ALJ must properly consider. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052, 1053 (9th Cir. 2006) (ALJ was required to consider letter from claimant's brother-in-law); *Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 975 (9th Cir. 2000) (ALJ was required to consider five letters from claimant's ex-employers and friends). Moreover, as noted above, the fact that plaintiff's sister's statements were only "partially consistent" with the findings adopted by the ALJ was not a legally sufficient reason because the ALJ was required to consider the sister's statements **prior** to making those findings.

The other reason provided by the ALJ, which he stated applied to the statements of both plaintiff's mother and her sister and which he characterized as the most important reason, was that their statements were "not fully supported by the clinical or diagnostic medical evidence discussed elsewhere in this decision."[7] (*See* AR 28.) The Court is mindful that the Ninth Circuit has held that inconsistency with medical evidence constitutes a legitimate reason for discrediting the testimony of lay witnesses. *See Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984); *see also Bayliss*, 427 F.3d at 1218; *Lewis*, 236 F.3d at 511. However, the Ninth Circuit also has held that it is error for the ALJ to reject the testimony of family members because the claimant's medical records did not corroborate their statements about the claimant's alleged symptoms and pain. *See Smolen*, 80 F.3d at 1289; *see also Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011); *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009). Courts have reconciled these two lines of cases by concluding that an ALJ may reject lay testimony that is affirmatively inconsistent with the medical evidence (under the *Vincent* line of cases), but that the ALJ

---

[7] An ALJ may dismiss lay witness testimony with germane reasons supported by evidence discussed "at other points in his decision" even if the ALJ "did not clearly link his determination to those reasons." *See Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

1  may not reject lay testimony merely because of lack of objective medical support (under
2  the *Smolen* line of cases). *See Rivera v. Colvin*, 2013 WL 6002445, at \*2-\*4 (D. Or. Nov.
3  12, 2013) (explaining that an ALJ may reject lay witness testimony based on "affirmative
4  contradictory evidence in the medical record, not absence of supporting evidence"); *see*
5  *also Grisel v. Colvin*, 2014 WL 1315894, at \*14 (C.D. Cal. Apr. 2, 2014); *Atwood v. Astrue*,
6  742 F. Supp. 2d 1146, 1152 (D. Or. 2010); *Staley v. Astrue*, 2010 WL 3230818, at \*19
7  (W.D. Wash. July 27, 2010). Here, the Court finds that the *Smolen* line of cases is
8  controlling because the ALJ failed to specify any affirmative inconsistencies between the
9  statements of plaintiff's mother and sister, and the medical evidence.

10  For the foregoing reasons, the Court finds that the ALJ failed to make a proper
11  adverse credibility determination with respect to the lay witness testimony of plaintiff's
12  mother and sister.

14  **H.    The ALJ also erred when he failed to incorporate the moderate mental**
15  **limitations he found into his RFC determination.**

16  As noted above, in connection with his Listings determination at step three of the
17  sequential evaluation process, the ALJ found, *inter alia*, that plaintiff had moderate
18  difficulties in social functioning and moderate difficulties with regard to concentration,
19  persistence, or pace. Plaintiff contends that the ALJ should have incorporated into his RFC
20  determination the moderate mental limitations he found. (*See* ECF No. 9-1 at 21-22.)

21  The Commissioner contends that this disputed issue is controlled by the Ninth
22  Circuit's decision in *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008). (*See* ECF
23  No. 20-1 at 25-26.) There, two doctors had assessed the claimant with moderate limitations
24  in mental functioning. *See id.* at 1173. An examining physician (Dr. McCollum) had found
25  that the claimant was "moderately limited" in her ability "to perform at a consistent pace
26  without an unreasonable number and length of rest periods" but did not assess whether she
27  could perform unskilled work on a sustained basis. *Id.* A state-agency reviewing
28  psychologist (Dr. Eather) had identified the claimant's limitation in pace, as well as

moderate limitations in several other areas of mental functioning but also found the claimant capable of carrying out "simple tasks." *Id.* Based on this medical opinion evidence, the ALJ assessed the claimant as having the RFC for simple, routine, repetitive work and he did not include any moderate limitations in pace or other mental areas of functioning in his hypothetical to the VE. *See id.* at 1171, 1173-74. The Ninth Circuit reasoned that, in doing so, the ALJ did not reject the two doctors' findings of moderate limitations in pace and other areas of mental functioning. *Id.* at 1174. Rather, the ALJ "translated" the claimant's condition, "including the pace and mental limitations, into the only concrete restrictions available to him — [the state-agency reviewing psychologist's] recommended restriction to 'simple tasks.'" *Id.* The Ninth Circuit therefore held that the ALJ's limitation to "simple, routine, repetitive" work sufficiently accommodated the medical-opinion evidence that the claimant had a "moderate" limitation in pace and "other mental limitations regarding attention, concentration, and adaption." *See id.* at 1173-74.

Here, unlike in *Stubbs-Danielson*, there is no medical opinion evidence that the ALJ was adopting when he made the determination that, despite the moderate limitations in social functioning and moderate difficulties with regard to concentration, persistence, or pace that he had found, plaintiff still was capable of remembering, understanding, and carrying out routine and non-complex tasks in a non-public setting. The Commissioner does not contend otherwise, but rather merely maintains that the Ninth Circuit in *Stubbs-Danielson* "never limited its holding to situations where only a doctor does the translation." (*See* ECF No. 20-1 at 26.) The Court disagrees. The Ninth Circuit expressly stated in *Stubbs-Danielson* that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace **where the assessment is consistent with restrictions identified in the medical testimony.**" *See Stubbs-Danielson*, 539 F.3d at 1174 (emphasis added); *see also Turner v. Berryhill*, 705 F. App'x 495, 498 (9th Cir. 2017) (citing *Stubbs-Danielson* for same proposition); *Rogers v. Comm'r of Soc. Sec. Admin.*, 490 F. App'x 15, 17-18 (9th Cir. 2012) (citing *Stubbs-Danielson* for the proposition that "the RFC assessment adequately captures restrictions in broad functional areas if it is

consistent with the concrete limitations in the medical opinions"). Absent medical opinion evidence, the ALJ was not qualified to make the determination he made. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (recognizing that an ALJ is "not qualified as a medical expert").

Because the Court finds *Stubbs-Danielson* distinguishable,[8] the Court concurs with plaintiff that the ALJ erred when he failed to incorporate the moderate mental limitations he found into his RFC determination. *See Valentine*, 574 F.3d at 690 (The ALJ's RFC determination and hypothetical question "must set out *all* the limitations and restrictions of the particular claimant." (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)); *see also Lubin v. Comm'r of Soc. Sec. Admin.*, 507 F. App'x 709, 712 (9th Cir. 2013) ("Although the ALJ found that Lubin suffered moderate difficulties in maintaining concentration, persistence, or pace, the ALJ erred by not including this limitation in the residual functional capacity determination or in the hypothetical question to the vocational expert."); *Brink v. Comm'r Soc.l Sec. Admin.*, 343 F. App'x 211, 212 (9th Cir. 2009) (hypothetical question limiting claimant to "simple, repetitive work" did not adequately capture moderate limitations in concentration, persistence, or pace).

## CONCLUSION AND RECOMMENDATION

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court. *See, e.g.,*

---

[8]    In support of her position, the Commissioner also has cited *Hoopai v. Astrue*, 499 F.3d 1071 (9th Cir. 2007). (*See* ECF No. 20-1 at 26.) However, the issue there was whether satisfaction of the step-two threshold requirement that a claimant prove her limitations are severe was dispositive of the step-five determination of whether the non-exertional limitations were sufficiently severe such as to invalidate the ALJ's exclusive use of the grids without the assistance of a vocational expert. *See Hoopai*, 499 F.3d. at 1076. The issue was not whether the ALJ had erred by not incorporating the moderate limitations he found into his RFC determination. The Court therefore finds that *Hoopai* is inapposite.

1 | *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990); *McAllister*, 888 F.2d at 603; *Lewin*

2 | *v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). Remand for further proceedings is

3 | warranted where additional administrative proceedings could remedy defects in the

4 | decision. *See, e.g., Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984); *Lewin*, 654 F.2d

5 | at 635. Remand for the payment of benefits is appropriate where no useful purpose would

6 | be served by further administrative proceedings, *Kornock v. Harris*, 648 F.2d 525, 527 (9th

7 | Cir. 1980); where the record has been fully developed, *Hoffman v. Heckler*, 785 F.2d 1423,

8 | 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits to

9 | which the disabled plaintiff is entitled, *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir.

10 | 1985).

11 |     In *Garrison v. Colvin*, 759 F.3d 995, 1019-21 (9th Cir. 2014), a Ninth Circuit panel

12 | held that where an ALJ failed to properly consider various types of evidence, it was

13 | appropriate to credit the evidence as true and remand the case for calculation and award of

14 | benefits. *See also Revels v. Berryhill,* 874 F.3d 648, 668-69 (9th Cir. 2017); *Trevizo v.*

15 | *Berryhill*, 871 F.3d 664, 682-83 (9th Cir. 2017). Here, plaintiff contends that the Court

16 | should apply the "credit as true" rule and remand for the payment of benefits based on the

17 | ALJ's failure to provide legally sufficient reasons for rejecting the medical opinions of

18 | plaintiff's treating physicians, plaintiff's testimony about her symptoms, and the lay

19 | opinions of plaintiff's family members. (*See* ECF No. 9-1 at 23-24; ECF No. 25 at 11.)

20 |     The Court notes, however, that after *Garrison* was decided, another Ninth Circuit

21 | panel did not apply or even acknowledge the "credit as true" rule where substantial

22 | evidence did not support an ALJ's rejection of treating medical opinions and his adverse

23 | credibility determination; instead, the panel simply remanded the case for further

24 | administrative proceedings. *See Ghanim*, 763 F.3d at 1167. And, in *Marsh v. Colvin*, 792

25 | F.2d 1170, 1173 (9th Cir. 2015), the panel did not apply or even acknowledge the "credit

26 | as true" rule where the ALJ had failed to even mention a treating source's opinion that the

27 | claimant was "pretty much nonfunctional"; instead, the panel simply remanded the case to

28 | afford the ALJ the opportunity to comment on the doctor's opinions.

In any event, as explained in *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015), a remand for an immediate award of benefits is appropriate only in "rare circumstances" and before ordering this "extreme remedy," the Court must first satisfy itself that three requirements have been met. First, the Court must conclude that "'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" *Id.* (quoting *Garrison*, 759 F.3d at 1020). Second, the Court must conclude that "'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" *Id.* (quoting *Garrison*, 759 F.3d at 1020). Third, the Court must conclude that "'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id.* (quoting *Garrison*, 759 F.3d at 1021).

Here, the Court is not convinced that the record has been fully developed and that further administrative proceedings would serve no useful purpose. For example, as discussed above, at the conclusion of the administrative hearing, the ALJ advised plaintiff and her counsel that, based on the ME's testimony that there was not enough information in the file for him to give an opinion on a period of time sufficient to establish that plaintiff met or even came close to meeting or equaling a Listing, he was going to request another psychological exam. However, plaintiff subsequently refused to keep the appointment scheduled for her. Further, it is conceivable to the Court that, if the ALJ incorporated the moderate mental limitations he found into his RFC determination and his hypothetical to the VE, the VE would testify that there are jobs that plaintiff remains capable of performing. *See, e.g.*, *Turner*, 705 F. App'x at 498-99 ("The RFC determination limiting Turner to 'simple, repetitive tasks,' which adequately encompasses Turner's moderate difficulties in concentration, persistence, or pace, is compatible with jobs requiring Level 2 reasoning."); *Rogers*, 490 F. App'x at 17-18 (holding that an RFC limited to simple, routine tasks, which did not expressly note the claimant's moderate limitations in interacting with others, nonetheless adequately accounted for difficulties with social functioning).

1     The Court therefore **RECOMMENDS** that plaintiff's motion for summary

2     judgment be **GRANTED**, that the Commissioner's cross-motion for remand be **DENIED**,

3     and that Judgment be entered reversing the decision of the Commissioner and remanding

4     this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. §

5     405(g).

6            Any party having objections to the Court's proposed findings and recommendations

7     shall serve and file specific written objections within 14 days after being served with a

8     copy of this Report and Recommendation.  *See* Fed. R. Civ. P. 72(b)(2). The objections

9     should be captioned "Objections to Report and Recommendation."  A party may respond

10    to the other party's objections within 14 days after being served with a copy of the

11    objections. *See id.*

12           IT IS SO ORDERED.

13

14    Dated:  November 27, 2018

15                                                    _____

16                                                    ROBERT N. BLOCK
                                                      United States Magistrate Judge

17

18

19

20

21

22

23

24

25

26

27

28